## B. BENDER *v.* WM. MONTGOMERY *et al.*

1. JUDGMENT. *Presumption of payment.* Where, upon the *supersèdeas* of a justice's execution, the defense was payment of the judgment, the only direct evidence of payment of very doubtful character, and, although more than eight years had elapsed from the rendition of the judgment, there had been no such period in which the courts were not closed by the late war, or the judgment creditor in litigation with the debtors in attempts to collect his debt, and there was no property subject to the execution of the judgment except that of the superseding creditor, who did not claim to have ever paid the debt, it was error to charge the jury as follows: "If eight years have elapsed since the rendition of the judgment, and the plaintiff has been shown to be a prompt collector, and all of the defendants, or either of them solvent, and their property open and accessible, you may infer from these circumstances that the judgment has been paid, and on this point you will look to the whole case and every fact."

2. EVIDENCE. *General reputation.* It is incompetent to prove the relation between a creditor and a constable as his agent, by general reputation.

3. BILLS AND NOTES. *Same. Parol testimony. Agreement of agent.* It is incompetent to prove by parol testimony that at the execution of a note for money borrowed through an agent, it was agreed by the agent that he would receive the amount by accounts on third persons.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.　N. BAXTER, J.

J. C. & J. M. GAUT for Bender.

E. H. EAST for Montgomery.

COOPER, J., delivered the opinion of the court.

*Certiorari* to quash a justice's execution.　On trial in the circuit court, the jury found as a fact that the

judgment had been "paid and satisfied in full. before the. issuance of the execution," and a judgment was rendered accordingly.    The plaintiff appealed in error.

The bill of exceptions shows that the judgment in controversy was rendered April 16, 1860, by a justice of the peace of Sumner county in favor of B. Bender against Wm. Montgomery, and Baxter Smith as surety, for $312.75, on a note.    The judgment was stayed by James A. Malone, and afterwards by W. B. Bate. Execution was issued January 3, 1861, to W. R. Lane, a constable, which seems never to have been returned. Lane died in 1862.    On April 12, 1871, another execution was issued to Davidson county, upon which a justice of that county, under the statute, issued an execution against Montgomery and Smith alone.    Smith superseded this execution upon the ground that it did not follow the judgment, but omitted the stayors, who were liable before him.    Bender, finding the objection to be fatal, dismissed the proceedings, and began anew.    The new execution, issued July 20, 1874, was against all the parties, and was followed by the execution in Davidson county.    This last execution was superseded by Bate.    On June 15, 1875, Bender, in open court, conceded that Bate had become stayor of the judgment under the act of the Legislature of January 26, 1861, which act had been held by this court to be unconstitutional and void, and agreed that the court might render judgment accordingly, which was done.    In the same month an *alias* execution was issued in Davidson county, which was levied upon Smith's property, and superseded by these proceedings.

Both the verdict of the jury and the judgment of the trial court being special, that the justice's judgment had been paid before the issuance of the execution in controversy, it will only be necessary to consider so much of the case as bears upon that issue.

The only evidence tending directly to prove the payment of the judgment consisted of the testimony of Wm. N. Montgomery. He testified that he was a son of Wm. Montgomery, then and now a citizen of the State of Kentucky, who had never resided in this State; that, under a general power-of-attorney from his father, he had carried on business in Gallatin, Tennessee, in his father's name, from 1856 or 1857 to 1859 or 1860, when witness became a partner in another firm, after which his father had no property in Tennessee subject to execution; that the note, on which the judgment in controversy was rendered, was executed by witness in his father's name, but whether he signed it as agent he cannot remember; that it was given for money borrowed from Bender through W. R. Lane, a constable, and witness procured Smith to sign it as surety for his father; that he supposes the process in the suit was served upon him, or he acknowledged service of it; that he procured Malone to stay the judgment, and, some dissatisfaction being expressed, he induced Bate to become additional stayor; that in January, 1861, he took claims, "probably some notes and some accounts, he could not tell which," to Lane, who selected enough of them that were good to pay the judgment and costs, and gave a receipt in full, which he has lost or mislaid.

Baxter Smith himself proved that he signed the note in 1859, at the instance of W. N. Montgomery, as the surety of the father. Bender testifies that the note was signed in the name of W. N. Montgomery.

Wm. Montgomery, the father, deposes that he never authorized his son, or any one else, to borrow money for him or sign his name to notes, and had no agent or property in Tennessee in 1859, 1860 or 1861; that he knew nothing of the note or judgment, and had no claims in the hands of W. N. Montgomery, or any one else, to pay the judgment.

The docket of the justice of Sumner county shows that opposite to the name of W. B. Bate, as additional stayor, in the justices' handwriting, are the words and figures: "February 7, 1861." It further shows a number of entries of stayors after the passage of the act of January 26, 1861, all of which are dated.

A former deposition of W. N. Montgomery, excluded for some cause as evidence in chief, was read to impeach his testimony, in which he deposed to having paid the judgment to Lane without specifying the mode of payment. And a witness testified that W. N. Montgomery had said to him that he had placed claims in Lane's hands, and told him when collected to apply proceeds to the judgment in question, as well as to other claims which Lane was collecting against him.

There was testimony tending to show that Lane was entrusted with money by Bender, who was a money lender and note shaver, to be used by him for Bender; that he acted as agent of Bender in collecting

claims, and often received notes in payment of judgments in his favor. Bender himself testified that Lane was never his agent for loaning money or discounting notes, but was entrusted with the collection of claims as an officer. He further testified that he had never been paid by Lane, or other person any part of the judgment. There was proof that Bender was a prompt collector, Malone, the proof shows, was insolvent when he became stayor, and so continued.

It will be noticed that the judgment, recovered April 16, 1860, was stayed by Malone and then by Bate. It is almost absolutely certain, notwithstanding W. N. Montgomery's testimony to the contrary, that Bate stayed the judgment on February 7, 1861, under the act of the 26th of January, of that year. And the testimony of W. N. Montgomery is so unsatisfactory in the generality of its statements touching the claims with which he says he paid the judgment, and so in conflict with that of other witnesses in regard to the ownership of these claims and his disposition of them, that the defendant felt constrained to introduce two witnesses in support of his general character. We cannot say that there is no evidence to sustain the verdict, but it is certainly far from satisfactory. The charge of the court ought to be critically accurate, and the rulings upon evidence objected to unexceptionable, to sustain the verdict.

His Honor, the trial judge, said to the jury: "If eight years have elapsed since the rendition of the judgment, and the plaintiff has been shown to be a prompt collector, and all the defendants, or either of

them solvent, and their property open and accessible, you may infer from these circumstances that the judgment has been paid, and on this point you will look to the whole case, and to every fact."

This charge had a tendency to mislead the jury, and if taken in its most obvious sense was clearly erroneous.    It fairly implies that the mere lapse of eight years from the rendition of the judgment would of itself be a circumstance from which, in connection with other facts, the payment of a judgment may be inferred.    But there is no warrant either in reason or authority, for such a statement.    If during the eight years, the judgment creditor has been actively engaged in trying to collect the judgment, and has been prevented by the litigation of the judgment debtor, or if he has been kept from action by the close of the courts on a state of war, the lapse of time would count for nothing.    All that this court has ever said on the subject is, that after the lapse of eight years, without any step taken to collect the judgment, evidence is admissible that the judgment creditor was a close collector: *Leiper* v. *Erwin*, 5 Yer., 97.    It is the failure to attempt to make the debt by legal process where the parties defendant have property subject to execution, not the mere lapse of time, that raises an inference of payment: *Kilpatrick* v. *Brashear*, 10 Heis., 372, 376.    So, too, it is the possession of property open to execution, as the charge states, which constitutes the other important element from which to draw the inference.    But in this case, the proof is clear that neither Wm. Montgomery nor Malone had

any such property. The former was a non-resident of the State, and the latter insolvent. Smith himself was solvent, but he does not claim that the debt was paid by him. W. N. Montgomery, if he is to be taken as the principal in the judgment, was insolvent after 1861. The charge is incorrect, in view of the facts proved, and admits of the construction, though doubtless not intended by his Honor, that the lapse of eight years, and proof that the judgment debtors were solvent, and the judgment creditor a prompt collector, will raise a presumption of payment.

The effect of W. N. Montgomery's testimony of the actual payment of the note, in view of the fact that the alleged payment was made to Lane, turns upon the relation between Bender and Lane, and the extent of the latter's authority. If he only had the authority of his office, or of agency to collect claims placed in his hands, he could receive nothing except money in payment: *Covney* v. *Wade,* 4 Hum. 444. It was important, therefore, for the defendant to impress upon the jury the extent of the agency.

With this object, a witness was introduced by defendant, who stated that he had heard both Bender and Lane say that Bender put money into Lane's hands to be used, and he was permitted to add, over the plaintiff's objection, "and such was the general reputation in the county." The testimony was incompetent. Evidence of reputation, on common fame, being mere hearsay, is not admissible in matters of private right: 1 Greenl. on Ev., sec. 137.

W. N. Montgomery, after testifying that he had

Bender *v.* Montgomery *et al.*

obtained the money for which the note was given through Lane, was permitted, over the objection of plaintiff, to add that he "then told Lane that he expected to repay the amount by accounts due his father in the store; that he could not let him have them then because they were not closed; that Lane said fix up the papers and bring them on, and I will take them; that he told Lane who they would be upon, and Lane knew them all to be good.". The pertinency of this testimony was to establish a contract at the time of the execution of the note to take accounts in payment, which might sustain the defense if the proof failed to show authority in Lane to receive the accounts in satisfaction of the judgments. The objection made at the time was that it was an attempt to estsblish by parol a different mode for the payment of the note than that implied from the note itself. The objection was well taken: *Campbell* v. *Upshaw*, 7 Hum., 185; *Ellis* v. *Hamilton*, 4 Sneed, 512; *Ragsdale* v. *Mabry*, 2 Lea, 736.

Reverse and remand.